484 So.2d 67 (1986)
Jeffrey NEASE a/k/a Michael Colwell a/k/a Louis Poynter, Appellant,
v.
STATE of Florida, Appellee.
No. 82-2164.
District Court of Appeal of Florida, Fourth District.
March 5, 1986.
Rehearing Denied April 9, 1986.
*68 Steven J. Finta, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Marlyn J. Altman, Asst. Atty. Gen., West Palm Beach, for appellee.

ON REMAND
PER CURIAM.
Appellant was tried and convicted in 1982 for trafficking in cocaine and for possession of methaqualone. We reversed the conviction holding that the trial court erred when it denied the motion to suppress. Nease v. State, 442 So.2d 325 (Fla. 4th DCA 1983), petition for review denied, 453 So.2d 45 (Fla. 1984). The United States Supreme Court, ___ U.S. ___, 105 S.Ct. 1835, 85 L.Ed.2d 136, subsequently granted the state's petition for certiorari and remanded the cause to this court for reconsideration in the light of Florida v. Rodriguez, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984). Pursuant to the Supreme Court's mandate, we withdraw our earlier opinion and affirm the defendant's conviction for possession, but reverse the order denying the suppression of the cocaine.
Nease aroused the suspicion of two narcotics agents at Fort Lauderdale Airport because his appearance and behavior were consistent with a drug courier's profile. The agents had observed Nease at the Delta Airlines ticket counter purchasing a one way ticket to Cincinnati with cash. He appeared nervous, shifting his weight from foot to foot and constantly looking around. They approached him, identified themselves as officers, and asked to see his tickets and identification. Nease complied. This revealed that the names on the ticket and the license did not match. Noting this discrepancy, the officers identified themselves once more, this time as narcotics agents, and asked if they could search his bags. Nease initially consented. The agents also returned the ticket and identification to Nease.
A third agent removed Nease's luggage from the airline conveyor belt, and the agents and Nease walked toward the room where the search was to take place. When they reached the door, however, Nease did not enter. Instead, he turned around and ran toward his departure gate. Two agents chased and tackled Nease while the third agent remained behind and searched the contents of his suitcase. This search revealed cocaine. A search of his person after his arrest revealed a small quantity of methaqualone.
The initial encounter between Nease and the agents was not of the sort *69 that triggers Fourth Amendment protections. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Rather, it was merely a consensual encounter which Nease was free to ignore. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). As noted by Justice White in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "[t]here is nothing in the constitution which prevents a policeman from addressing questions to anyone on the streets." 392 U.S. at 34, 88 S.Ct. at 1886, 20 L.Ed.2d at 913. Similarly, a seizure did not occur when the agents asked Nease if they could inspect his ticket. It is not until the situation becomes such that a reasonable person would conclude that he is no longer free to leave that a stop has escalated into an illegal detention under Terry. See Mendenhall, 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509.
In order to detain someone even momentarily, police must have an articulable suspicion that he has engaged in, or is about to engage in criminal conduct. Royer, 460 U.S. at 498, 103 S.Ct. at 1324, 75 L.Ed.2d at 236. In Florida v. Rodriguez, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984), the court noted that the defendant's strange behavior, including attempts to get away, and his companions' contradictory statements about their identity provided the articulable suspicion necessary to justify a brief detention and seizure. Id. at ___, 105 S.Ct. at 311, 83 L.Ed.2d at 171. Similarly, in Royer, supra, the court concluded that the fact the defendant was traveling under an assumed name, in addition to his behavior and appearance, which fit the drug courier's profile, was sufficient to suspect him of carrying drugs and to detain him for the purpose of investigating that suspicion. Royer, 460 U.S. at 502, 103 S.Ct. at 1326, 75 L.Ed.2d at 239. The detention in Royer, however, exceeded the limits permissible under Terry because the agents failed to return Royer's airline ticket and identification. Instead, they seized his luggage and led him into a room for questioning, thus making it clear that he was not free to leave.
More recently, the Florida Supreme Court concluded that narcotics agents had an articulable suspicion to detain a suspect for questioning pursuant to Terry after they had found cocaine on his companion's person. Jacobson v. State, 476 So.2d 1282, 1287 (Fla. 1985). Rodriguez, Royer, and Jacobson, supra, were all airport stop cases in which narcotics agents initially approached the defendants because they fit within a drug courier's profile.
In the present case, the agents discovered that Nease was traveling under an assumed name in the course of a consensual encounter. This, as well as the surrounding facts including his nervousness and the fact that he fit within the profile, gave rise to an articulable suspicion that he was carrying drugs. At all times prior to this, Nease had been free to leave because the agents had returned his ticket to him. He agreed, however, to have his luggage searched. Before any further questioning could take place, Nease fled from the agents, leaving his luggage behind.
Nease's running constitutes a nonverbal withdrawal of consent to search his luggage. See, e.g., Jacobson, supra. However, because a founded suspicion had developed at this point, the agents no longer needed to rely on Nease's consent to detain him under a Terry stop. Consequently, the agents were justified in pursuing Nease for further questioning. The struggle that followed when they caught him would have been sufficient to justify his arrest for interfering with an officer in the performance of his legal duty. § 843.02, Fla. Stat. (1985). See, e.g., Jacobson, 476 So.2d at 1287.
We conclude that for all practical purposes Nease was under arrest at this time. The methaqualone found in his possession, *70 therefore, was admissible because it was obtained in a search pursuant to a lawful arrest. We reach a different conclusion, however, with regard to the cocaine found in Nease's suitcase.
Because we conclude that by running Nease effectively withdrew his consent to a search of his luggage, a warrantless search of those bags was improper. The Fourth Amendment protects an owner's expectation of privacy in the contents of a closed container. United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In Chadwick, the court concluded that a warrant was necessary to search a locked footlocker seized contemporaneously with the defendant's arrest, despite the fact that the police had probable cause to believe it contained marijuana. The court stated:
Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer incident of the arrest.
433 U.S. at 15, 97 S.Ct. at 2485, 53 L.Ed.2d at 51.
In the present case, the agents had only an articulable suspicion that Nease's bags might contain drugs. Under the circumstances, the government's interest in stemming illicit drug trade justified only a minimal intrusion into Nease's personal effects. See United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); Terry v. Ohio, supra. This could have been accomplished by a brief detention of the luggage in order to subject it to a canine sniff test. Cf. Place, supra. The warrantless search of the luggage, without Nease's consent, led to evidence obtained in violation of his Fourth Amendment rights. The trial court erred in denying Nease's motion to suppress. Accordingly, we reverse the judgment of conviction for trafficking in cocaine.
AFFIRMED IN PART AND REVERSED IN PART.
DOWNEY and WALDEN, JJ., and HURLEY, DANIEL T.K., Associate Judge, concur.